WHITE ET AL. *v.* SPARKILL REALTY CORPORATION ET AL.

No. 336. Argued January 7, 1930.—Decided February 24, 1930.

Mr. *Walter H. Pollak,* with whom *James Gibson,* Second Assistant Attorney General of New York, *Carl S. Stern* and *Ruth I. Wilson* were on the brief, for appellants.

502

504

*Mr. Jackson A. Dykman,* with whom *Mr. William H. Dykman* was on the brief, for appellees.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This in form is a suit in equity against the members of the Board of Commissioners of the Palisades Interstate Park, appointed pursuant to a statute of the State of New York, the Attorney General and the Commissioner of the Conservation Department of the state. The bill was filed March 19, 1929, and alleges that the Sparkill Realty Corporation is the owner in fee of lands lying within the southern district of New York, of which the Standard Trap Rock Corporation is lessee. The lands contain valuable deposits of " trap rock "; and the Standard Trap Rock Corporation, in preparing to develop the deposits, contracted for the erection and equipment of a plant, not adapted for use elsewhere, thereby subjecting itself to liabilities exceeding $1,000,000.

While this work was in progress, estimates and maps, as required by state law, for the acquisition of these and other lands for a state park, were approved by the board and certain state officers. Notice was served on appellees

that a description of the lands, certified as correct, had been filed with the Secretary of State; and that the lands had been appropriated by the people of the state for public and state park purposes, pursuant to the state statutes. Thereupon, the bill alleges, the Board of Commissioners, on October 11, 1928, " wrongfully entered upon the said real property of plaintiffs [appellees] and converted the personal property thereon to their own use and have since remained in possession of said real and personal property and prevented its use, enjoyment, occupation and operation by plaintiffs for any purpose to plaintiffs' great and continuing damage."

It is further averred that the sum of $500,000 was allocated to the acquisition of the property, but that the value of the property exceeds $3,000,000; that appellees are suffering daily loss from the " continued unlawful occupation of their property," the aggregate sum of which will be such that the damage will be irreparable and destructive of appellees' property; and that, therefore, they are without adequate remedy at law.

The prayer is, that the acts of the board and state officers, and the statutes of the state purporting to authorize them, be declared invalid as violating the Fourteenth Amendment and other provisions of the federal Constitution, as well as a provision of the state Constitution; and that appellants be enjoined from attempting to enforce the provisions of the statute, notice, description or certificate, or proceeding against appellees at law or in equity to compel compliance with, or inflicting or recovering any penalty, forfeiture or damage for noncompliance by appellees with the statute, notice, description or certificate, or " from continuing in possession of plaintiffs' said property."

The statutory provisions assailed as unconstitutional are found in §§ 59 and 761 of the New York Conservation

Law, L., 1928, chap. 242. Section 761 confers upon the Commissioners of the Palisades Interstate Park power to acquire lands by entry and appropriation in the manner provided for in § 59. Section 59 authorizes the Conservation Department to enter upon and take possession of lands, etc., which, in the judgment of the department, shall be necessary for public park purposes, or for the protection and conservation of the lands, forests and waters within the state. A description of the property to be entered upon must be made and certified, which, together with a notice endorsed thereon that the property described is appropriated by the people of the state, shall be filed in the office of the Secretary of State. A duplicate must be served on the owner or owners of the lands, etc., and " thereupon such property shall become, and be, the property of the people of the state." Provision is made for an adjustment of compensation for the property and legal damages, and the issue of a certificate stating the amount due; which amount shall be paid out of the state treasury upon the audit and warrant of the Comptroller. It is further provided that any owner may present to the state Court of Claims a claim for the value of the land and damages; and the court is authorized to hear and determine such claim and render judgment thereon. The Comptroller is directed to issue his warrant for the payment of the amount, with interest from the date of the judgment until the thirtieth day after the entry of final judgment; and such amount shall be paid out of the state treasury.

Upon filing the bill it was ordered that appellants show cause before a court of three judges, constituted under § 266 of the Judicial Code (U. S. C. Title 28, § 380), why an interlocutory injunction should not issue. A hearing was had upon affidavits submitted by both parties. The affidavit of James G. Shaw, on behalf of appellees, con-

tains the statement that, acting under the statutory provisions above set forth, the property in question was " appropriated by the people of the state of New York for public and state park purposes with the approval of the Governor "; and that the commissioners " thereafter entered upon and took possession of said property, of which they have since retained possession to the exclusion of the plaintiffs." The affidavit of J. Du Pratt White, President of the Board of Commissioners of the Palisades Interstate Park, sets forth that, after the appropriation papers were served, appellees ceased doing any work on the property; that the contractors and other persons engaged in doing work left, taking their machinery and tools with them, and certain movable property and equipment used or for use in connection therewith was likewise removed from the premises; and that the state, through the commission, had, since October 11, 1928, been in exclusive possession of the property as a state park. These excerpts from the affidavits are not controverted.

Appellant submitted a motion to dismiss the bill on the ground, among others, that it did not state facts sufficient to constitute a valid cause of action in equity against the defendants. The court below denied the motion to dismiss and granted an interlocutory injunction in accordance with the prayer of the bill. The state statute was held invalid for the reason that it authorized the taking of private property for public use without just compensation, or making adequate provision for payment thereof. In respect of its denial of the motion to dismiss, the court simply said that the action was not one for ejectment, and cited *Hopkins* v. *Clemson College,* 221 U. S. 636; *United States Freehold Land & Emigration Co.* v. *Gallegos,* 89 Fed. 769.

We do not consider the question of the constitutionality of the state legislation, because it is apparent from the

bill and affidavits that the bill should have been dismissed on the ground that appellees had an adequate remedy at law.

The Board of Commissioners, acting for the state, entered upon the lands and had been in the exclusive possession thereof for several months before the filing of the bill, effectively preventing appellees from using, enjoying or occupying the property. The relief sought was to enjoin appellants "from continuing in possession," that is to say, to oust appellants so as to restore the lands to the possession of appellees. It is plain that this is not the office of an injunction. Entry and possession of the lands by appellants and all alleged wrongful acts and proceedings preliminary thereto and in aid thereof had been consummated long before suit was brought and preventive relief by injunction, consequently, had ceased to be appropriate.

*Whitehead* v. *Shattuck*, 138 U. S. 146, was a suit in equity to quiet title to real property. Plaintiff was the owner in fee, holding title as trustee. Defendants claimed title and were in possession, openly and adversely. Plaintiff averred that defendants' claim of title was made in fraud of his rights; that the patent under which they claimed was fraudulently made, the land not being subject to entry and patent. Upon these facts, this Court held that plaintiff had an adequate remedy at law, and that a suit in equity could not be sustained, saying (page 151):

". . . where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a

contest over the title both parties have a constitutional right to call for a jury."

In *Lacassagne* v. *Chapuis*, 144 U. S. 119, 124, this court said:

"The plaintiff was out of possession when he instituted this suit; and by the prayer of this bill he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore the plaintiff, by injunction, to rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another. 1 High on Injunctions, 2d ed. § 355."

To the same effect is *United States* v. *Wilson*, 118 U. S. 86, 89; *Black* v. *Jackson*, 177 U. S. 349, 361. In the latter case the rule was applied, notwithstanding the financial inability of the defendant to respond in damages.

The two cases cited by the court below are not in point. In *Hopkins* v. *Clemson College, supra*, plaintiff sued for damages caused by erection of a dike on one side of a river, which had the effect of submerging his lands lying wholly upon the other side. The injury was " continuous from day to day and year to year." The prayer was for damages, and abatement and removal of the dike. The injury was in the nature of a continuing trespass; possession was neither involved nor sought.

In *United States Freehold Land & Emigration Co.* v. *Gallegos, supra*, the bill was to enjoin the diversion of water to the injury of complainant's lands, constituting a continuing trespass. The ownership or possession of the lands was not in controversy.

The present case is entirely different. Here the purpose of the suit is to eject appellants from lands which for five months had been and still were in their exclusive

512

possession, under claim of right and in pursuance of a statute which gives color of title notwithstanding the challenge to its constitutionality. See *Doe on dem. of Trustees, etc.* v. *Newbern Academy,* 9 N. Car. 233. That challenge does not require resort to a suit in equity. It will be open for determination in an action at law which is the appropriate remedy.

The decree below must be reversed and the cause remanded with instructions to dismiss the bill, but without prejudice to an action at law in a court of competent jurisdiction.

Section 274a of the Judicial Code, U. S. C., Title 28, § 397, and Rule 22 of the Equity Rules, 226 U. S., appendix, 6, contemplate that where what is really an action at law is erroneously begun as a suit in equity, the same may be transferred to the law side of the court and after appropriate amendments may be prosecuted to a judgment as if originally begun on the law side. See *Liberty Oil Co.* v. *Condon National Bank,* 260 U. S. 235; *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70, 76; *Twist* v. *Prairie Oil Co.,* 274 U. S. 684, 689, 692. But both the statute and the equity rule refer, and can only refer, to cases of which the court would have jurisdiction if they were brought on its law side. This is not such a case. The parties are citizens, not of different States, but of the same State. And if the plaintiffs were suing at law in ejectment their complaint, if confined to an orderly statement of such a cause of action, without anticipating possible defenses, would not present a case arising under the Constitution, or a treaty or law of the United States. *Taylor* v. *Anderson,* 234 U. S. 74. Thus the case, if brought as an action at law, would be one of which a federal district court would not have jurisdiction. In this situation no other course is open than to direct that the bill be dismissed and leave the plaintiffs free to sue in a state court, if they be so advised.

*Decree reversed.*