## COMMONWEALTH TRUST CO. OF PITTSBURGH v. RECONSTRUCTION FINANCE CORPORATION.

### No. 3396.

District Court, W. D. Pennsylvania.
Oct. 27, 1938.

Stonecipher & Ralston and Strassburger & McKenna, all of Pittsburgh, Pa., for plaintiff.

Arthur F. McCarthy and Samuel .L. Sperling, both of Philadelphia, Pa., and B. F. Madore, of Bedford, Pa., for defendant.

SCHOONMAKER, District Judge.

Defendant has moved to transfer this case to the law side of this court, urging as a reason for such transfer, that the plaintiff has a plain, adequate and complete remedy at law. The plaintiff is the trustee in bankruptcy of the Colonial Iron Company, which placed the defendant, Reconstruction Finance Corporation, in possession of some 4896.38 tons of pig-iron under the terms of an agreement between the Colonial Iron Company and the Reconstruction Finance Corporation, dated April 6, 1937. The plaintiff seeks a decree in equity, declaring this agreement fraudulent as against creditors, and therefore null and void as against the plaintiff, and asking for the delivery of this pig-iron to plaintiff.

We thus have for determination the question of whether the bill of complaint shows a cause of action cognizable in equity, or one where the plaintiff would have an adequate remedy at law.

The allegations of fact contained in the bill may be briefly summarized as follows:

On March 31, 1937, the Colonial Iron Company, now bankrupt, gave defendant a mortgage on its plant at Riddlesburg, Bedford County, Pennsylvania, to secure a loan of $125,000, and on April 6, 1937, in consideration of the granting of this loan, and while insolvent, attempted to pledge all pig-iron which it produced in the future as security for two notes held by defendant, one in the sum of $110,000, being a prior loan by defendant to the Colonial Iron

Company, and the other in the sum of $125,000, being for a loan then made. At this time, the defendant either knew, or should have known, that the Colonial Iron Company was insolvent. At the same time also, defendant took a lease of certain ground covered by said mortgage, and required the pig-iron produced by the Colonial Iron Company to be placed thereon. On August 10, 1937, defendant loaned to the Colonial Iron Company an additional $75,000, evidenced by a note under the terms of which defendant also claims to hold the pig-iron now in dispute. The pledge-agreement of April 6, 1937, provided that as long as the maturity of the aforesaid note of $125,000 was not accelerated, the defendant would release to the Colonial Iron Company any pig-iron held by defendant above the value of $75,000. The defendant, from time to time, made such releases, but on November 13, 1937, defendant refused to release any more pig-iron, although it then held in its possession pig-iron to the value of $108,000, and had not at that time accelerated the maturity of said note of $125,000, thereby causing the discontinuance of the Colonial Iron Company's operations, and its subsequent bankruptcy. At the date of bankruptcy, defendant had in its possession, under the terms of said agreement, 4896.38 tons of pig-iron. The pledge-agreement of April 6, 1937, was not recorded in any public office in Pennsylvania; and neither the present nor future creditors of the Colonial Iron Company had knowledge or means of knowledge of its existence. The aforesaid mortgage and pledge-agreement attempted to create a lien upon all assets of the Colonial Iron Company, including assets not in existence, and were intended to give defendant prior rights over other creditors of the Colonial Iron Company. Subsequent to the date of the pledge-agreement, creditors extended to the Colonial Iron Company credit on the faith of the apparent worth of that Company. Certain of these creditors have filed proofs of claim in bankruptcy, and the plaintiff, 'as trustee in bankruptcy of the Colonial Iron Company, filed this bill of complaint in the interest of all creditors of bankrupt entitled to share in the distribution of the estate. There has been no change in possession of said pig-iron, which the defendant threatened to sell at private sale. The Referee in Bankruptcy issued a restraining order to prevent such sale, and the Court continued the order so that the plaintiff might bring a plenary action.

On these facts we are of the opinion that plaintiff's remedy is at law and not in equity.

Suits in equity will not be sustained in a Federal Court in any case where a plain, adequate, and complete remedy may be had at law. Revised Statutes, § 723, 28 U.S.C.A. § 384, Jud.Code § 267. On the facts shown in the bill, plaintiff would have a plain, adequate, and complete remedy at law either in replevin, trover, or for money had and received.

As we view the law, suits for the recovery of personal property cannot be maintained in equity, unless the personal property is not repleviable, or is of such a character that money damages would not compensate for its loss. Van Norden v. Morton, 99 U.S. 378, 25 L.Ed. 453; Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873; Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; White v. Sparkill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578; Jones v. MacKenzie, 8 Cir., 122 F. 390; Campbell v. Chase National Bank, D.C., 5 F.Supp. 156; Keystone Electric Light, Heat & Power Company v. Peoples' Electric Light, Heat & Power Company, 200 Pa. 366, 49 A. 951.

This is true, even if there is an allegation of fraud found in the bill and a prayer for the cancellation of an instrument, because, if a contract is void for fraud, it would be no more binding at law than in equity. Buzard v. Houston, 119 U.S. 347, 7 S.Ct. 249, 30 L.Ed. 451. As pointed out in Wenzel & Henoch Const. Co. v. Metropolitan Water District, D. C., 18 F.Supp. 616, 621, courts of equity have repeatedly declined to exercise jurisdiction in cases of fraud, where relief could be obtained at law; and this despite the fact that no recovery could be had at law without the court defeating, upon the ground of fraud, some written agreement.

Pomeroy on Equity Jurisprudence, Vol. 1, § 110, page 124, thus points out the distinction between actions in equity and at law involving alleged fraudulent instruments:

"A court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be cancelled, and renders a decree conferring in terms that exact relief.

"A court of law entertains an action for the recovery of the possession of chattels,

648

or, under some circumstances, for the recovery of land, or for the recovery of damages, and although nothing is said concerning it either in the pleadings or in the judgment, a contract or a conveyance, as the case may be, is virtually rescinded; the recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here the remedy of cancellation is not expressly asked for, nor granted by the court of law, but all its effects are indirectly obtained in the legal action."

■ As to the contention of the plaintiff that this bill will lie under the Pennsylvania Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, 39 P.S.Pa. § 351 et seq., which provides for the setting aside of conveyances which are fraudulent as to creditors, we cannot see its application to the facts alleged in the bill of complaint, because there is no allegation in the bill that the pledge-agreement and the physical pledge were made without a "fair consideration," which is a necessary element to a suit in equity under that law to set aside the

conveyance. See Secs. 3, 4, and 9 of the Act, 39 P.S. §§ 353, 354, 359.

Finally, there is no allegation in the bill that the defendant is financially irresponsible and would not be able to respond to any money-damage the plaintiff might recover against it.

■ The motion to transfer the case to the law side of the court was made before the effective date of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The motion was argued before that date. But, in view of the fact that Rule 86 of these rules requires that the Rules of Civil Procedure govern all further proceedings in actions pending at the effective date of the rules, it is unnecessary to make any order for the transfer of the case to the law side of the court, for the case will now proceed as a civil action under the new rules, subject to the ruling of the court that the complaint presents no ground for the granting of equitable relief.

Defendant shall now answer the complaint within twenty days. An order may be submitted accordingly.