## HYGRADE FOOD PRODUCTS CORPORATION v. UNITED STATES.
### No. 13386.

Circuit Court of Appeals, Eighth Circuit.
April 9, 1947.

George C. Claassen, of Cedar Rapids, Iowa, and Paul J. Donovan, of Chicago, Ill., for appellant.

Tobias E. Diamond, U. S. Atty., of Sioux City, Iowa (William B. Danforth, Asst. U. S. Atty., of Sioux City, Iowa, on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment entered in an action brought by the government against Hygrade Food Products Corporation under the provisions of the Federal Food, Drug, and Cosmetic Act, 21 U. S.C.A. § 301 et seq., which enjoined appellant from shipping in interstate commerce any of its products processed and manufactured at its Manchester, Iowa, plant. It will be convenient to refer to the parties as they appeared in the trial court.

The defendant, since March, 1944, has owned and operated a plant at Manchester, Iowa, and has been engaged in the process-ing of cheese and cheese products from milk, and shipping these products in interstate commerce. It is charged in the complaint that these products have become contaminated with filth, rendering them injurious to health, and were adulterated in violation of Section 342(a), (3) and (4), Title 21 U.S.C.A. After hearing the court found that defendant acquired its plant at Manchester, Iowa, in March, 1944, and has since been engaged in the processing of cheese and cheese products from milk, and has been shipping and introducing the products so processed into interstate commerce; that under the standards used by the Administrator of the Federal Food, Drug, and Cosmetic Act, milk as to sediment content is classified into five grades known as Grades 1 to 5 inclusive; that Grade 1 is milk which is practically free from sediment; that Grade 2 is milk in which there is only a very small amount of sediment; that Grade 3 is milk in which there is a moderate amount of sediment; that Grade 4 is milk in which there is a large amount of sediment, and that Grade 5 is milk in which there is a very large amount of sediment; that milk which grades 1 and 2 is highly fit and satisfactory for processing into cheese; that milk which grades 3, while undesirable, does not have such a heavy sediment content as to result in filthy cheese, but that milk which is graded 4 and 5 is such filthy milk as to result in filthy cheese. The court then sets out the results of various inspections of the defendant's plant at which milk was graded. The court found that the problem of filthy milk in the area of defendant's Manchester, Iowa, plant has been aggravated by war time conditions in that the farmers have been short of help; that the defendant, commencing in July, 1945, for the first time began to cope with the filthy milk situation and has spent some time, effort and expense on the problem; that it made special provision for an employee to do something about the filthy milk situation by carrying on an educational campaign among the milk producers; that it made arrangements to have tests made of the milk as delivered at the plant and as a result the number of defendant's patrons have been reduced from around one hun-

dred to fifty-eight; that the producers of filthy milk whose product is rejected by defendant frequently thereafter sell their filthy milk or cream to certain of defendant's competitors, but that defendant since it began operating the Manchester plant has been a large outlet for filthy milk and a hindrance to those purchasers of milk and cream who are trying to raise the standards of dairy cleanliness, and that certain of defendant's competitors now operate as a hindrance to the defendant when it is trying to raise the standards of dairy cleanliness; that since July 16, 1945, defendant has put considerable pressure on its patrons to quit delivering filthy milk, but when defendant relaxes this pressure a number of such patrons lapse back into dairy uncleanliness, and that when government pressure is released as to defendant it relaxes back into acceptance and processing of filthy milk. The court found, "That the defendant has shown that it can and will do everything necessary to place its plant at Manchester, Iowa, in proper condition for the production of cheese, and no injunction is needed as to that phase." The court also found that because of competitive conditions and the desire to secure milk the pressure on defendant to accept filthy milk was such that defendant could not resist it and that before defendant would be able to refrain from using filthy milk a very substantial change in the entire background in the matter of dairy cleanliness in the area served by its plant would have to occur. The court found that unless restrained by the court defendant would ship in interstate commerce dairy products processed at its Manchester, Iowa, plant contaminated by filthy substances contrary to the provisions of Title 21 U.S.C.A. §§ 331(a) and 342(a) (3). The court entered judgment restraining defendant,

"* * * from shipping or introducing into interstate commerce any cheese or other dairy products processed at its Manchester, Iowa, plant.

"It is further ordered that after the expiration of two years, the defendant may move to modify this judgment so as to permit it to ship or introduce into interstate commerce cheese or other dairy products processed at its Manchester, Iowa, plant on the ground that there has been such a change in circumstances as to justify the expectation that such products will be processed without the use of filthy milk."

In seeking reversal defendant challenges the court's findings and conclusions on substantially the following grounds: (1) The court should have refused an injunction because defendant is a responsible and reputable party and no present intention to violate the law appears; (2) the injunction should not be entered against the defendant as a penalty for past infractions; (3) injunctional relief provided for under Section 332, Title 21 U.S.C.A., presupposes a temporary injunction only with opportunity to the defendant to show a change of circumstances; (4) under Section 332, Title 21 U.S.C.A., the court was without authority to enjoin a processor or shipper from shipping its unadulterated products in interstate commerce.

Section 331, Title 21 U.S.C.A. prohibits the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and Section 332 of the same title confers jurisdiction upon the District Courts of the United States "for cause shown * * * to restrain violations of section 331".

When defendant acquired the Manchester plant in March, 1944, it was in a dilapidated and unsanitary condition so far as the equipment and buildings were concerned and the manager was apparently careless and incompetent. Since that time defendant has discharged the old manager who had been in the employ of defendant's predecessor and employed a skilled and competent manager to take his place. It has made very substantial repairs, additions, improvements and changes in its physical structures so that the court found, "That the defendant has shown that it can and will do everything necessary to place its plant at Manchester, Iowa, in proper condition for the production of cheese, and no injunction is needed as to that phase." The basis for granting the injunction lies in the fact that defendant's supply of milk was up to the time of the hearing below the standard required al-

though the defendant had with apparent good faith been endeavoring to educate the producers to furnish a better grade and in so doing had rejected unfit milk to such an extent that it had lost about forty per cent of its patrons. The importance of these recitals goes simply to the question of defendant's good faith. As above noted, it has replaced its incompetent plant manager with a competent and skilled one and at a large expenditure has so improved the condition of its plant that no injunction is needed so far as the sanitary condition of the plant is concerned, nor indeed, so far as the present personnel of the management is concerned. The fact remains, however, that the milk supply which was being received at the plant even up to the time of hearing was not up to the required standard and this warranted the court in granting an injunction. The jurisdiction of the court, however, is limited to restraining violation of Section 331, and that is the introduction or delivery for introduction into interstate commerce of products that are adulterated or misbranded. An injunction is primarily a preventive remedy; it looks to the future rather than to the past. It is not for the purpose of punishing for wrongful acts already committed. White v. Sparkill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; Bowles, Adm. v. Carnegie-Illinois Steel Corp., 7 Cir., 149 F.2d 545. The injunction here absolutely closes the door of the court on the defendant for an arbitrary period of two years regardless of what changes may be brought about during that time. Defendant can not even ask the court to modify the injunction. This is true for a period of two years even though the grounds for which it was granted no longer exist by reason of a change in the controlling facts on which the injunction rested. The injunctional decree should be an ambulatory one. It is executory and continuing as to its purpose and should be subject to adaptation as events may change. This is not a case in which rights may be said fully to have accrued upon facts which are stable, permanent and impervious to change, but it involves the supervision of changing conduct or conditions. The denial of the right to apply to the court for a modification of the judgment within a period of two years is contrary to the genius of the jurisprudence of chancery. Under our system of government even the social outcast or the convicted criminal, though shunned by society, may have his day in court and seek for justice. We think too, the injunction is too broad in that it restrains the defendant from shipping any products processed at its Manchester plant regardless of what the grade of the processed products might be. As has been observed, the physical plant itself is in sanitary condition; it is competently managed. It has not apparently been able to secure raw material of the requisite grade. It is surely conceivable that with its present equipment and personnel, defendant could process products that are not, within the meaning of the statute, adulterated, and if so, it should be permitted to have such products transported in interstate commerce.

The judgment appealed from should be modified so as to enjoin and restrain defendant, under the provisions of Section 332, Title 21 U.S.C.A., from introducing or delivering for introduction into interstate commerce, in violation of Section 331 and Section 342(a) (3), Title 21 U.S.C.A., adulterated cheese or dairy products processed or manufactured, or to be processed or manufactured at its Manchester, Iowa, plant. The judgment should contain recital that jurisdiction of the cause is retained for the purpose of enforcing or modifying the judgment and for the purpose of granting such further relief as may hereafter appear appropriate. When so modified, the injunction can, of course, be enforced by contempt proceedings if necessary. The injunction should forbid only the acts which are prohibited by the statute. It should not prohibit the shipping or introducing of pure products into interstate commerce. As so modified the judgment will be affirmed.