## UNITED STATES v. NASIF.

### Civ. No. 3388.

United States District Court
W. D. Louisiana, Shreveport Division.

March 24, 1952.

William Paul Miller, Arnold Teks, Atlanta Litigation Section, Atlanta, Ga., for plaintiff.

Malcolm E. Lafargue, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

The question to be determined here is whether defendant is entitled to a jury trial on the issue of having collected more from her tenants than the permissible rates under the Rent Control Act, coupled with a demand for treble damages. The tenants failed to sue within the delays provided by the statute, and the Government brought this action both for damages and for an injunction pursuant to Sections 205 and 206 of the Housing and Rent Control Act of 1947, as amended, 50 U.S.C.A.Appendix, §§ 1881–1902. It charged that defendant had, over varying periods, collected from four tenants of housing accommodations situated at 1022 Dalzell Street in the City of Shreveport, Louisiana, rents in excess of the ceiling amounting in the aggregate to $860, and alleged that defendant would "continue to violate the said Act" by depriving "the tenants of their rights and protection" thereunder, thus violating "the policy and intent of Congress manifested in the above Act to prevent overcharges in rent."

The prayer was for judgment for three times the overcharges during the twelve months preceding the filing of the petition, or the sum of $2445; that defendant be required to refund to the tenants "all amounts in excess of the lawful maximum rent"; or "in the alternative, that it be paid to the Treasury of the United States"; that if refund to the tenants is required, "the amounts of damages to which plaintiff is entitled be reduced" accordingly; and finally, that "a preliminary and final injunction restraining defendant from further violations of the ceiling rates be granted."

Rent control was a part of the general price control law of 1942 (Act Jan. 29–30, 1942, 56 Stats. 23 et seq., Section 205(a) to (e), 50 U.S.C.A.Appendix, § 925 (a–e)), and was adopted as a war measure, the purpose being like all other provisions to prevent "gouging" of the armed forces, war workers and others in the controlled areas. Its validity is not questioned. In

the original form, the victim was given the right of action primarily, including the right to claim three times the overcharge, and if for any reason he was "not entitled to bring suit * * *, the Administrator * * *" might do so "on behalf of the United States." (Subsection (e).)

In Porter, Price Administrator, v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 1088, 90 L.Ed. 1332, the Administrator brought under subsection (e) suit to enjoin overcharges for rent involving a large number of tenants in apartment buildings belonging to defendant. Later, the complaint was amended to include a prayer that defendant be required "to tender to such persons as are entitled thereto a refund of all amounts collected * * * as rent * * * in excess of the maximum rents established * * *," excluding, however, all tenants who had previously instituted their own actions. The District Court granted the injunction but declined to grant restitution, Bowles v. Warner Holding Co., 60 F.Supp. 513, and was affirmed by the Court of Appeals of the Eighth Circuit, 151 F.2d 529. The Supreme Court reversed this ruling, and in doing so, said:

"An order for the recovery and restitution of illegal rents may be considered a proper 'other order' on either of two theories:

"(1) It may be considered as an equitable adjunct to an injunction decree. Nothing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief. To be sure, such a recovery could not be obtained through an independent suit in equity if an adequate legal remedy were available. White v. Sparkill Realty Corp., 280 U.S. 500, 50 S. Ct. 186, 74 L.Ed. 578; Lacassagne v. Chapuis, 144 U.S. 119, 12 S.Ct. 659, 36 L.Ed. 368. But where, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law. Alexander v. Hillman, 296 U.S. 222, 241–242, 56 S.Ct. 204, 210, 211, 80 L.Ed. 192.

"(2) It may be considered as an order appropriate and necessary to enforce compliance with the Act. Section 205(a) anticipates orders of that character, although it makes no attempt to catalogue the infinite forms and variations which such orders might take. The problem of formulating these orders has been left to the judicial process of adapting appropriate equitable remedies to specific situations. Cf. Phelps Dodge Corp. v. National Labor Board, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271. In framing such remedies under § 205(a), courts must act primarily to effectuate the policy of the Emergency Price Control Act and to protect the public interest while giving necessary respect to the private interests involved. The inherent equitable jurisdiction which is thus called into play clearly authorizes a court, in its discretion, to decree restitution of excessive charges in order to give effect to the policy of Congress. Clark v. Smith, 13 Pet. 195, 203, 10 L.Ed. 123. And it is not unreasonable for a court to conclude that such a restitution order is appropriate and necessary to enforce compliance with the Act and to give effect to its purposes. Future compliance may be more definitely assured if one is compelled to restore one's illegal gains; and the statutory policy of preventing inflation is plainly advanced if prices or rents which have been collected in the past are reduced to their legal maximums.

"The legislative background of § 205(a) confirms our conclusion that the traditional equity powers of a court remain unimpaired in a proceeding under that section so that an order of restitution may be made. The Senate Committee on Banking and Currency in reporting upon the bill which became the Emergency Price Control Act, stated in regard to § 205(a): 'In common with substantially all regulatory statutes, the bill authorizes the official charged with the duty of administering the act to apply to any appropriate court, State or Federal, for an order enjoining any person who has engaged or is about to engage in any acts or practices which constitute or will consti-

tute a violation of any provision of the bill. Such courts are given jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case.' S.Rep.No.931, 77th Cong., 2d Sess., p. 10. The last sentence is an unmistakable acknowledgment that courts of equity are free to act under § 205(a) in such a way as to be most responsive to the statutory policy of preventing inflation.

"It is true that § 205(e) authorizes an aggrieved purchaser or tenant to sue for damages on his own behalf; and if that person has not sued within the statutory period, or for any reason is not entitled to sue, the Administrator may institute an action for damages on behalf of the United States. *To the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under § 205(a), see Veazie v. Williams, 8 How. 134, 160, 12 L.Ed. 1018, § 205(e) supersedes that possibility and provides an exclusive remedy relative to damages. It establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties. Moreover, a court giving relief under § 205(e) acts as a court of law rather than as a court of equity. But with the exception of damages, § 205(e) in no way conflicts with the jurisdiction of equity courts under § 205(a) to issue whatever 'other orders' may be necessary to vindicate the public interest, to compel compliance with the Act and to prevent and undo inflationary tendencies.*

*"Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205(e). Bowles v. Skaggs, 6 Cir., supra, 151 F.2d 821. When the Administrator seeks restitution under § 205(a), he does not request the court to award statutory damages to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205(e). Rather he asks the court to act in the public interest by restoring the status quo and order-ing the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity. Thus it is plainly unaffected by the provisions of § 205(e).*

"Nor do we find any other provision of the Act that expressly or impliedly precludes a court from ordering restitution in the exercise of its equity jurisdiction under § 205(a). This is not a situation where a statute has created a right and has provided a special and exclusive remedy, thereby negativing any jurisdiction that might otherwise be asserted. United States v. Babcock; 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011. And it clearly is not an instance where equity jurisdiction is lacking because of a failure to exhaust ·prescribed administrative remedies. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. Rather it is an occasion where Congress has utilized, *save in one aspect*, the broad equitable jurisdiction that inheres in courts and where the proposed exercise of that jurisdiction is consistent with the statutory language and policy, the legislative background and the public interest." (Emphasis by the writer.)

Three justices dissented, not as to the equitable nature of the remedy invoked, but on the ground that the power to exercise it had not been granted by the Act either expressly or impliedly.

Since the Court was dealing only with the right of the Administrator to require restitution, the language underscored may be said to be somewhat in the nature of obiter; nevertheless, it is a clear declaration that "to the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under Section 205(a), see Veazie v. Williams, 8 How. 134, 160 [12 L.Ed. 1018], *Section 205(e) supersedes that possibility and provides an exclusive remedy relative to damages. It establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties. Moreover, a*

404

court giving relief under Section 205(e) acts as a court of law rather than as a court of equity." (Emphasis by the writer.)

■ It is true the present proceeding does not fall within the technical definition of an action as known to the common law at the time of the adoption of the federal Constitution; yet, by its very nature it is highly penal and also carries provisions for criminal prosecution and penalties, including both fines and imprisonment. None of the authorities cited for the Government, denying the right to jury, have been reported, so that the basis for that conclusion can be considered or analyzed.

It is believed that insofar as the claim for treble damages is concerned, as distinguished from the prayer that the excess over properly fixed rents be refunded to the tenants, defendant is entitled to a trial by jury. Of course, the present Rules of Procedure permit the combining of demands for relief in equity and at law, and there is no difficulty about submitting to a jury the claim for damages, while leaving to the Court a determination of all matters in equity.