**SAMOA AVIATION, INC., dba SAMOA AIR, Plaintiff,**

**v.**

**AMERICAN SAMOA GOVERNMENT, Defendant.**

High Court of American Samoa
Trial Division

CA No. 98-03

December 1, 2003

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiff, Marshall Ashley
For Defendant, Fiti A. Sunia, Attorney General

On November 13, 2003, Plaintiff Samoa Aviation, Inc. ("Samoa Air") brought this action for injunctive relief preventing Defendant American Samoa Government ("ASG") from terminating its lease of office and ticket counter space in the terminal building at the Pago Pago International Airport. ASG answered, denying any wrongful termination of the lease and affirmatively alleging various grounds precluding injunctive relief, and counterclaimed for Samoa Air's immediate eviction from the leased premises. Samoa Air's application for a preliminary injunction was heard on November 20, 2003. Both counsel were present.

## Preliminary Injunction Grounds

A preliminary injunction is appropriately issued only when "(1) there is a substantial likelihood that the applicant will prevail at trial on the merits and that a permanent injunction will be issued against the opposing party; and (2) great or irreparable injury will result to the applicant before a full and final trial can be fairly held on whether a permanent injunction should issue." A.S.C.A. § 43.1301(j).

To show a substantial likelihood of success at trial on the merits, "a movant merely needs to raise questions so serious and difficult as to call for more deliberate consideration, or at least demonstrate a fair question for litigation." *Samoa Aviation, Inc. v. Bendall*, 28 A.S.R.2d 101, 103-04 (Trial Div. 1995) (citations omitted). As a general proposition, the availability of an adequate legal remedy precludes equitable injunctive relief. *See White v. Sparkill Realty Corp.*, 280 U.S. 500, 510 (1930). However, the existence of a legal remedy is not alone sufficient to deprive a movant of equitable relief. *See Stewart Dry Goods Co. v. Lewis*, 287 U.S. 9, 11 (1932). The legal remedy must be speedy, adequate, and efficacious, and preserve the movant's rights at the present time and not as of a future date. *Id.*

## Findings of Fact

### 1. The Lease Cancellation Notice

On November 6, 2003, ASG issued a notice entitled "Lease Cancellation" terminating Samoa Air's lease of office and ticket counter spaces in the terminal at the Pago Pago International Airport ("the airport"). Samoa Air received the notice on or about the same day. The stated grounds for the termination was based on Article XIII(1)(F) of the parties' lease agreement authorizing ASG to cancel the lease upon Samoa Air's abandonment of air transportation service at the airport or

reduction of service to and from the airport to less than four flights per day for a period of more than one month.

Samoa Air denies abandonment of its air transportation operations at the airport, and ASG does not advocate otherwise. Samoa Air concedes that it is not presently providing air service to and from the airport and that its service has been reduced below the four daily flights minimum for more than one month. Samoa Air maintains, however, that each party to a contract has a duty of good faith and fair dealing in the performance and enforcement of the contract, *see* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981), and that ASG has grossly violated that duty in a highly discriminatory manner.[1]

## 2. Context of the Lease Cancellation

Samoa Air is a federally licensed "Part 121" air service carrier. This status authorizes Samoa Air to provide scheduled commercial air services to and from the airport. It is the only "Part 121" air carrier with authority to provide air service between the airport and the Manu`a Islands and between the airport and [Western] Samoa. Polynesian Airlines ("PAL") has similar status but as a foreign carrier operating from Samoa under different auspices. Locally, PAL only regularly operates flights between the airport and Samoa. "Part 121" status also imposes considerable legal regulatory requirements upon an air carrier, particularly in reference to marketing services and aircraft safety.

Samoa Air is presently unable to engage in air operations. It has only one Twin Otter aircraft. Under federally imposed safety standards, the aircraft's components are subject to specified lifetimes. In July 2003, Samoa Air learned that changes in the aircraft's frame would soon be required.[2] Samoa Air's flight operations completely ceased on this

---

[1] In addition to the matters discussed below, Samoa Air cites 49 U.S.C.A. § 47107 for the proposition that ASG, as the recipient of substantial federal airport development grants and by its discriminatory tactics in dealing with Samoa Air, has violated this statute by not complying with required non-discrimination assurances. We will not, however, evaluate this argument at this time but will leave it for further development, as may be necessary, at the trial of this action.

[2] Samoa Air maintains that component lifetimes are only fixed under program projections at three-month intervals. While this may be literally accurate, Samoa Air must have been aware that the present time limitation was looming well before July 2003. We see no reason why Samoa Air did not initiate and develop concrete plans to deal with this readily expected event long before July 2003. Nonetheless, this lack of foresight does not overcome the track record of obstacles ASG put in Samoa Air's way.

account on October 30, 2003. The time estimate to accomplish the frame changes is three to four weeks. Samoa Air attempted to lease another aircraft to service its Manu`a Island and Samoa routes during this period. Samoa Air made preliminary arrangements for the frame change and an interim leased aircraft. However, it did not have the ready cash to pay for the changes and the downpayment required to obtain the substitute aircraft.

Two other air carriers, Inter Island Air and Vision Air, have immediate capability to serve the route between the airport and the Manu`a Islands. Vision Air, however, is an authorized "Part 135" carrier, not a "Part 121" carrier. "Part 135" carriers can only operate charter services, contracted on a case-by-case basis. They cannot provide scheduled commercial air services, and are not subject to the same safety scrutiny as a "Part 121" carrier. Apparently, Inter Island Air does not yet have formal federal approval to provide air services.

### 3. Samoa Air's Proposal for ASG's Financial Assistance

In August 2003, the cessation of Samoa Air's operations approached. As the only "Part 121" air carrier between the airport and the Manu`a Islands, Samoa Air representatives approached the Governor with a request for funds to alleviate Samoa Air's immediate cash flow problems and enable it to lease an aircraft while its own aircraft was undergoing frame changes. The Governor denied the request and, in essence, stated that when he would inform Samoa Air of his plan to remove its "inept management" when he was ready.

A short time later, on August 31, 2003, the Governor proposed legislation to the Legislature of American Samoa to appropriate $500,000 to ensure continuing air service to the Manu`a Islands and give the Governor discretion to use the funds to cope with the transportation void. Samoa Air representatives then discussed with legislative committee members possible use of these funds on a reimbursable basis to alleviate its immediate cash flow problem. They believed the legislators were favorably receptive to this idea.

The $500,000 appropriation was enacted without, as originally proposed, any limitation by specific directions on the Governor's discretion for expenditure of the funds. On September 11, 2003, Samoa Air proposed to the Governor that it be afforded use of the appropriated funds on a reimbursable basis, $100,000 for the frame changes and $150,000 for the substitute leased aircraft. Citing a lack of necessary documentation, the Acting Governor rejected Samoa Air's proposal on the same day. Though the rejection letter offered to meet for further discussions, the Governor's legal counsel informed Samoa Air a short time later that its proposal simply would never be accepted.

The Governor has apparently authorized use of the appropriated $500,000 to subsidize, as may be necessary, PAL's scheduled flight operations and Inter Island Air's charter flight operations between the airport and the Manu'a Islands. The U.S. Department of Transportation has given PAL, though a foreign air carrier, temporary permission to service this route, apparently until the current problems with this needed service is solved.

### 4. Samoa Air's Proposal to Aloha Airlines

In November 2002, addressing continuing complaints and other problems with Hawaiian Airlines' air service between Honolulu and the airport, Samoa Air representatives proposed to Aloha Airlines representatives a joint venture under which Aloha would provide commercial air services to American Samoa with Samoa Air handling ground services at the airport and other necessary assistance through its facilities here. However, in the spring of 2003, the Governor directly requested Aloha Airlines to provide air services to American Samoa, and since then, Aloha has not returned Samoa Air's communications to pursue the joint venture proposal.

It has now been publicly announced that Aloha Airlines will start providing air services to American Samoa in December 2003. Aloha representatives recently measured Samoa Air's office space at the airport and, on the date of this application hearing, were present in the Territory preparing for this advent.

### 5. Samoa Air's Charter Proposal to ASG

In June 2003, again addressing the ongoing air service problems with Hawaiian Airlines, a Samoa Air representative advised the Governor of its plan to charter aircraft from Omni Airlines to provide flights between Honolulu and the airport. The Governor concurred in the charter idea and indicated that ASG had funds available for this purpose. During this meeting, the Governor did not even look at Samoa Air's written proposal and at least indirectly indicated that funds for this purpose would not be made available to Samoa Air.

However, later in June 2003, the Governor advised Samoa Air by a telephone call that ASG would financially help with deposits for charter flights. Acting on this information, Samoa Air spent considerable time and expense filing necessary paperwork with the U.S. Department of Transportation and hiring personnel in Hawaii and American Samoa to set up charter operations. One day in early July 2003, the Governor's legal counsel asked Samoa Air to document its charter arrangements, but on the following day he advised Samoa Air that ASG would deal directly

with Omni Airlines for a charter program and would only consider having Samoa Air handle ground services.

6. Samoa Air's Indebtedness to ASG

Samoa Air has outstanding debts of approximately two million dollars, of which approximately $350,000 is owed to ASG for rent of Samoa Air's airport facilities, landing fees, income taxes, and other charges. In turn, ASG owes Samoa Air a presently unspecified but lesser amount. Even after August 31, 2003, when the Governor directed all ASG agencies to route all requests for payments to Samoa Air to the Governor's Office, Samoa Air responded to two requests by ASG's medical center for emergency air services. Samoa Air has not received any payments from ASG for the two emergencies and only a single payment on another statement for outstanding services since the Governor's directive.

ASG has a long-standing and well-known history of forbearance in debt collection efforts, not just debts owed by Samoa Air but also by other users of the airport's facilities and other obligors generally, as well as delaying payments of its own obligations. ASG's forbearances generally, and with respect to Samoa Air particularly, have yet not, by any reasonable characterization, reached the level of constituting a waiver of payment of debts to it. However, the forbearance in this case is certainly indicative of ASG's relationship with Samoa Air in general and the manner of the performance and enforcement of the lease agreement in particular.

7. Samoa Air's Diminished Sale Value

ASG is well aware that the present owners of Samoa Air are endeavoring to sell the company to another owner. On September 25, 2003, the Governor advised Samoa Air that, in effect, he had encouraged other airlines to work with Samoa Air on an American Samoan solution to the Manu`a air service problem. In October 2003, envisioning ASG's forgiveness of Samoa Air's debts, Island Air and Vision Air sought to buy Samoa Air. However, after negotiations, Samoa Air determined that neither Island Air nor Vision Air had sufficient funds to purchase and conduct Samoa Air's operations.

The present owners of Samoa Air are in the midst of serious negotiations for the sale of the company to a reportedly respected and solvent airline operating out of the Territory of Guam. Samoa Air believes that the sale can be finalized in December 2003. The prospective buyer airline is aware of Samoa Air's indebtedness and, according to Samoa Air, is willing and able to assume responsibility for the debts. The prospective buyer is also aware of ASG's lease cancellation notice to Samoa Air and,

196

again according to Samoa Air, views the loss of office and ticket counter space at the airport as substantially diminishing Samoa Air's value. Samoa Air's chief executive officer believes that this diminished value will seriously impact sale of Samoa Air at otherwise fair market value. It is therefore important that Samoa Air retains office and ticket counter space at the airport to get back on its financial and operational feet.

## Conclusions

■ Taking into consideration the foregoing facts as a whole, we conclude that ASG has demonstrated an ongoing course of conduct that is tantamount to unfair, and perhaps bad faith, dealings with Samoa Air. ASG purposely interfered with Samoa Air's performance of the four daily flights condition required by Article XIII(1)(F) of the airport office and ticket counter space lease agreement. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 Cmt. d. This interference, along with a habitual forbearance in collecting Samoa Air's debts to ASG, show that ASG also abused its power to enforce the lease agreement. *See id.* § 205 cmt. e. The evidence warrants, at the very least, further and greater in-depth analysis of the lease cancellation and surrounding circumstances. For preliminary injunction purposes, the element of the substantial likelihood of success at trial on the merits and ultimate issuance of a permanent injunction in Samoa Air's favor against ASG has been sufficiently shown. *See Samoa Aviation, Inc.*, 28 A.S.R.2d at 103-05.

■ In regards to irreparable harm, ASG argues that Samoa Air's injury, if any, is adequately remedied by monetary damages. However, the ruin of a party's business constitutes irreparable harm. *See Samoa Aviation, Inc.*, 28 A.S.R.2d at 105; *see also Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). The immediate termination of Samoa Air's office and ticket counter space lease at the airport destroys Samoa Air's efforts to continue flight operations, because, in the current situation, termination will irrevocably disrupt sale of the company at a fair market value to a buyer who is ready, willing, and able to take over Samoa Air's air service operations. Furthermore, loss of American Samoa's only "Part 121" carrier will cause harm to the people and Territory of American Samoa. *See Samoa Aviation, Inc.*, 26 A.S.R.2d at 105. Therefore, the element of great or irreparable injury to Samoa Air as a result of the lease cancellation before a full and final trial can be held is also sufficiently established.

Samoa Air is entitled to a preliminary injunction preventing ASG from evicting Samoa Air from its leased premises at the airport.

Here, as in most disputes seeking judicial resolution, we encourage settlement. While it is not our role or intent to venture into the realm of the Executive Branch's operations, perhaps, Samoa Air could be allowed

197

to relocate to another space at the airport or share space with another carrier.

## Order

1. Samoa Air's application for a preliminary injunction against ASG is granted.

2. During the pendency of this action, or until further order of this Court, ASG, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are enjoined: (1) from evicting or attempting to evict Samoa Air from its office and ticket counter space in the terminal at the airport, (2) from preventing Samoa Air from using common use areas at the airport as described in the Lease Agreement, and (3) from preventing Samoa Air full and free right of ingress and egress from the premises described in injunctions (1) and (2) above.

It is so ordered.