R. M. POPE and wife, Bobbie Pope, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 1839.

United States District Court
N. D. Texas,
Abilene Division.
May 20, 1959.

---

Bradbury, Tippen & Brown, Abilene, Tex., for plaintiff.

W. B. West, III, U. S. Atty., Fort Worth, Tex., for defendant.

ESTES, District Judge.

### Findings of Fact

1.

R. M. Pope and wife, Bobbie Pope, are the owners of 216 acres of agricultural land in Taylor County, Texas, adjacent to and immediately south of Dyess Air Force Base. Dyess Air Force Base is a military installation of the United States of America lying south of the town of Tye in Taylor County, Texas.

2.

Dyess Air Force Base was placed in operation on April 26, 1954. Flights of large heavy military aircraft operating out of Dyess Air Force Base have occurred in substantial numbers since April 1, 1956.

3.

There is, and has been, since the base was placed in operation one main runway located thereon running in a north-south direction about 13,000 feet in length and 200 feet in width. The improvements on plaintiffs' farm are located 1,550 feet south and 750 feet east of the extended center line of such runway projected to the south.

4.

Since April, 1956, up to the present time there have been three main types of aircraft operating from Dyess Air Force Base: The KC–97, the C–124 (both propeller driven aircraft) and the B–47 (a multi-engine jet-propelled aircraft). Most of the take-offs are toward the south.

**5.**

All aircraft taking off from Dyess Air Force Base are required to have filed instrument flight plans with air traffic control. When operating under flight plan, on a southerly take-off the B–47 type jet bomber, which creates the greatest amount of noise and disturbance of all types of aircraft used on this installation, proceeds in a southerly direction, a distance of 15 miles along the extended center line of the runway until an altitude of 6,000 feet is reached before making a turn in any other direction. On landings of the B–47 planes to the north at a distance of 1,750 feet south of the south end of the runway, the altitude above the ground would be 150 feet. At a distance of 1,550 feet south of the runway the B–47 would be at an average altitude of less than 150 feet in landing in a northerly direction. The noise and disturbance from the B–47s is much greater when they are taking off than when they are landing. However, there have been frequent flights of military aircraft operating in and out of Dyess Air Force Base over the Popes' property at low altitudes since April 1, 1956.

**6.**

The highest and best use of plaintiffs' property is agricultural and farming. The fair market value of plaintiffs' property under the conditions of aircraft activity overhead, as of April 1, 1956, was reduced by $3,240 by low and frequent flight of aircraft over plaintiffs' property.

**7.**

The injurious effects of noise, vibration and fumes from operation of the test cell upon plaintiffs' property is of the same kind and only in greater degree than on other property in the vicinity. Furthermore, the injurious effects of the operation of the test cell add little if anything to the injurious effects of the frequent low flying aircraft over the property. Accordingly, plaintiffs are not entitled to recover for any reduction in value of their property resulting from the operation of the test cell.

**8.**

The closing of an easterly access road which was formerly available to plaintiffs has resulted in requiring 1.6 additional travel miles to the City of Abilene. The plaintiffs are entitled to recover for the reduction in value of their property resulting from this additional travel mileage in the amount of $1,100.

**9.**

Four acres of woodland pasture land have been converted to creek beds by the sloughing off of the creek banks on plaintiffs' property since the defendant straightened the creek channel in 1956. The surface of these 4.0 acres has been destroyed for pasture purposes. The plaintiffs are entitled to compensation for the taking of these 4.0 acres in the amount of $400.

**10.**

The erosion resulting from the straightening of the creek channel destroyed a 12 foot deep well which had been located on plaintiffs' property. The fair market value of the farm was reduced by $5 an acre as a result of the loss of the well. A permanent source of water of a potable nature is an asset in an agricultural unit, and without such water it is entirely reasonable that the land's fair market value has been reduced by this amount.

Conclusions of Law

Upon the foregoing findings of fact, the Court concludes:

■ (1) That the plaintiffs are entitled to just compensation from the United States of America for the taking of an easement of flight over plaintiffs' property and for the other takings of interests as above set out in plaintiffs' property. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, and the cases cited in the opinion of this Court in United States v. 4.43 Acres of Land, etc., D.C., 137 F.Supp. 567, approved in United States v. 64.88 Acres of Land, etc., 3 Cir., 244 F.2d 534.

(2) That plaintiffs are entitled to recover of and from the United States of

America the following sums plus an amount computed at a rate of 4% per annum from April 1, 1956, to the time of payment, all as just compensation for such takings and the resulting damages to plaintiffs' property, viz.:

|     |     |     |
| --- | --- | --- |
| (a) | Flight easement | $3,240.00 |
| (b) | Loss of road | 1,100.00 |
| (c) | Loss of 4.0 acres of land | 400.00 |
| (d) | Loss of water well | 1,080.00 |
|     |     | $5,820.00 |

(3) That plaintiffs are not entitled to compensation by reason of defendant's operation of the test cell. "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision." Transportation Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336; Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996; Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088; Nunnally v. United States, 4 Cir., 1956, 239 F.2d 521; see United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. If the property owners' "annoyance is of the same type to which everyone living in the vicinity is subjected in varying degrees there is, at most, a 'sharing in the common burden of incidental damages'." Nunnally v. United States, supra [239 F.2d 524].

(4) That defendant is entitled to be vested with a perpetual easement of flight over plaintiffs' property for airplanes of any character.

### Judgment

The Court having filed its findings of fact and conclusions of law, which are made a part of the judgment herein, it is ordered, adjudged and decreed that plaintiffs recover of and from the United States of America the sum of $5,820, together with interest thereon from April 1, 1956, to date of payment at the rate of four (4%) per cent per annum, all as just compensation for the taking of a flight easement and other damages to plaintiffs' property, as follows:

|     |     |     |
| --- | --- | --- |
| (a) | Flight easement | $3,240.00 |
| (b) | Loss of road | 1,100.00 |
| (c) | Loss of 4.0 acres of land | 400.00 |
| (d) | Loss of water well | 1,080.00 |
|     |     | $5,820.00 |

subject to the execution by plaintiffs of a deed conveying to defendant a perpetual easement of flight for airplanes of any character over the entire extent of plaintiffs' 216 acres, more or less, at elevations above 150 feet.

No costs are adjudged against either party.