Ethel C. MOSHER, William W. Degge, Louise Degge, the Boulder Land, Irrigation and Power Company, a corporation, and George W. Poor, individually and as Administrator of the Estate of Mary A. Poor, all individually and as representatives of a class similarly situated, Plaintiffs,

v.

CITY OF BOULDER, COLORADO, a municipal corporation, Arapahoe Chemicals, Inc., a corporation, United Haulers Association, Inc., Caroline Tumbleson and Bertha L. Crispin, Defendants.

Civ. A. No. 8200.

United States District Court
D. Colorado.

Jan. 10, 1964.

John H. Schultz, Denver, Colo., for plaintiffs Ethel C. Mosher, William W. Degge, Louise Degge, Boulder Land, Irrigation & Power Co. and George W. Poor.

Neil C. King, Peter C. Dietze, Boulder, Colo., for defendant City of Boulder.

Williams & Zook, Charles E. Williams, John G. Taussig, Jr., Boulder, Colo., for defendant Arapahoe Chemicals, Inc.

Mack, Johnson & Doty, Stanley F. Johnson, Boulder, Colo., for defendant United Haulers Ass'n, Inc.

Douglas K. Goss and Richard C. Hopkins, Boulder, Colo., for defendants Caroline Tumbleson and Bertha L. Crispin.

DOYLE, District Judge.

This is a class action brought by various named plaintiffs, individually, and as representatives of a class purported to be similarly situated, against the City of Boulder, Colorado; against two corporations which allegedly deposit waste and refuse in the Boulder City Dump; and against two persons who have allegedly leased land to the City of Boulder for use as a dump.

Plaintiffs assert that this Court has jurisdiction because of the existence of a federal question. There is no diversity of citizenship between the plaintiffs and the defendants. Federal jurisdiction is assertedly based solely on Title 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000.00 exclusive of costs, and arises under the Constitution, Laws, or treaties of the United States. Specifically, this action assertedly arises under the Due Process Clause of the Fourteenth Amendment.

Whether or not the complaint states a cause of action against the City of Boulder over which this Court has jurisdiction is the sole question which it is neceesary to decide on the respective motions of the various defendants to dismiss the complaint for want of federal jurisdiction—for an action brought against only the private parties concededly raises no federal question. Cf. Cogswell v. Board of Levee Com'rs, 142 F.2d 750 (5th Cir. 1944).

The most useful and generally applied test to determine whether a complaint raises a federal question is that formulated by Mr. Justice Cardozo in the case of Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936):

> " * * * To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, *and an essential one*, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be *supported if* the Constitution or laws of the United States are *given one construction* or effect, and *defeated if they receive another*. * * * A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * * and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * * Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. * * * " [Emphasis supplied] 299 U.S. at 113, 57 S.Ct. at 97–98, 81 L.Ed. 70

In setting forth these criteria Mr. Justice Cardozo repeated the language of

**34**

Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205:

" \* \* \* 'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, *upon the determination of which the result depends.*' \* \* \* " [Emphasis supplied]

■■ In determining whether a federal question has been raised, then, it is settled that a court refers only to the plaintiff's complaint. The federal question requisite to jurisdiction cannot be raised by the defendant's answer nor by the plaintiff's refutation of anticipated defenses. Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). It is also settled that federal jurisdiction may not be invoked by including superfluous allegations. This doctrine was applied in the case of White v. Sparkill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578 (1930), in which the plaintiff, out of possession of property allegedly taken by officers of the State of New York, sought to have the defendant state officers ejected. Since a federal question would not appear in a well-pleaded ejectment complaint it was held that the plaintiff, who had superfluously alleged that his property had been taken without just compensation in violation of the Fourteenth Amendment, had not stated a cause of action which arose under the Constitution. It arose, rather, and found an adequate remedy under the law of the State of New York.

■ A substantially identical test of jurisdiction based on a federal question has been adopted and applied in this Circuit in Porter v. Bennison (10th Cir. 1950), 180 F.2d 523, cert. denied, 340 U.S. 817, 71 S.Ct. 47, 95 L.Ed. 600 (1950). Here it was said:

" \* \* \* But not every question of federal law lurking in the background or emerging necessarily places the suit in the class of one arising under the Constitution or laws of the United States, within the meaning of [28 U.S.C. § 1331]. A suit having for its purpose the enforcement of a right which finds its origin in the Constitution or laws of the United States is not necessarily and for that reason alone one arising under such laws. In order for a suit to be one arising under the Constitution or laws of the United States, it must really and substantially involve a dispute or controversy in respect of the construction or effect of a provision in the Constitution or the validity, construction, or effect of an Act of Congress, upon the determination of which the result depends. A right or immunity created by the Constitution or laws of the United States must be an essential element of plaintiff's cause of action, and the right or immunity must be such that it will be supported if one construction or effect is given to the Constitution or laws of the United States and will be defeated if another construction or effect is given. And a genuine present controversy of that kind must be disclosed upon the face of the complaint. Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205; Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Regents of New Mexico College of Agriculture & Mechanic Arts v. Albuquerque Broadcasting Co., 10 Cir., 158 F.2d 900; Andersen v. Bingham & Garfield Railway Co., 10 Cir., 169 F.2d 328 [14 A.L.R.2d 987]. \* \* \* " 180 F.2d at 525

■ The plaintiffs' allegations in the instant case do not meet the above test. The plaintiffs' complaint sets forth various allegations which, if true, would establish that the defendants have created and maintain a private nuisance in the form of the Boulder City Dump. These

allegations do not raise a federal question.

The City of Boulder has not condemned the property of the plaintiffs; nor are officials or agents of the City alleged to have actually entered upon or occupied plaintiffs' property. The plaintiffs allege that the acts of the defendants have deprived them of use and enjoyment of their property; that defendants have negligently caused and allowed debris, foul odors, polluted water and, occasionally, flames to emanate from the City Dump thus adversely affecting the property of the plaintiffs, rendering it less useful, and habitation thereon less pleasant. Plaintiffs allege that the acts of the defendants in connection with the operation of the City Dump constitute a taking of their property without compensation in violation of the Fourteenth Amendment. This allegation, however, is stated as a legal conclusion which, of course, it is for the court rather than the pleader to make. As a matter of law it seems, at least in the Tenth Circuit, that the acts which the defendants are alleged to have committed, even though tortious as a matter of Colorado law, do not constitute a taking in the constitutional sense. Governmental action short of occupancy is first a taking "if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter." United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 359–360, 89 L.Ed. 311 (1945). The more recent case of United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384–1385, 91 L.Ed. 1789 (1947), reiterates that "[p]roperty is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time."

The plaintiffs do allege damage; but they fail to note the distinction between consequential damages and taking which both the Supreme Court and the Tenth Circuit apparently have maintained. The Court of Appeals for the Tenth Circuit explained the distinction in the recent case of Batten v. United States, 306 F.2d 580 (10th Cir. 1962), cert. denied, 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed. 2d 502 (1963):

"In construing and applying [the Fifth Amendment provision: 'nor shall private property be taken for public use, without just compensation'] the federal courts have long and consistently recognized the distinction between a taking and consequential damages. In Transportation Company v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336, the Supreme Court held that governmental activities which do not directly encroach on private property are not a taking within the meaning of the Fifth Amendment even though the consequences of such acts may impair the use of the property. The principle was repeated in United States v. Willow River Power Co., 324 U.S. 499, 510, 65 S.Ct. 761, 89 L.Ed. 1101, the Court saying that 'damage alone gives courts no power to require compensation.' We have recognized the rule in this circuit by our holding in Harris v. United States, 10 Cir., 205 F.2d 765, 767, that under the federal constitution 'damages to property not taken are compensable only as a consequence of or incidental to an actual taking.'" 306 F.2d at 583.

In this respect the Colorado Constitution affords an aggrieved property owner a greater measure of protection than does the Constitution of the United States. The United States Constitution requires compensation only where there has been an actual taking. Art. II, Section 15 of the Colorado Constitution, however, provides that:

"Private property shall not be *taken or damaged*, for public or private use, without just compensation. * * *." [Emphasis supplied]

Here, of course, where the question is whether the cause of action set forth in

the complaint arises under the Constitution of the United States, it is the federal provision which controls.

Plaintiffs cite many cases for the proposition that federal question jurisdiction obtains in the instant case, but they are inapposite. In Lowe v. Manhattan Beach City School District, 222 F.2d 258 (9th Cir. 1949), officials of a municipal corporation had actually occupied the property of the plaintiff. In Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148 (1932) and South Covington & C. St. Ry. v. City of Newport, 259 U.S. 97, 42 S.Ct. 418, 66 L.Ed. 842 (1922), officials of municipal corporations were imminently threatening occupancy or destruction of the plaintiffs' property. Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1912), was an action brought and pursued in the courts of the State of Washington, which on review by the Supreme Court of the United States involved the constitutionality of a denial of previously guaranteed compensation for damages in consequence of repeal of a state statute.

The cases of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), and Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed. 2d 585 (1962), are cases which go further than those cited above, but neither of these decisions holds that maintenance of a nuisance constitutes a taking. In both of those cases governmental agencies had effected the imposition of a servitude in consequence of continuing and repeated physical trespasses. In each there was a finding that repeated trespass by airplane on airspace at extremely low altitudes had the effect of imposing a servitude which amounted to a taking. The fact that noise and shock waves rendered the plaintiffs' property unfit for use as a chicken farm, in the one case, and residential property, in the other, might seem to lend credence to the assertion that emanations of putrid gas, noisome odors, drifting debris, and licking tongues of flame can give rise to a taking. Those decisions, however, involved more than alleged consequential damages. Both turn on the existence of repeated physical trespass into airspace immediately adjacent to the surface of the plaintiffs' property, and not on the fact that noise and shock waves were generated in the near vicinity. Only after the taking is established, by repeated physical trespass, are consequential damages recoverable.

We are referred to no decisions holding that the mere maintenance of a nuisance effects a taking of adjoining or nearby property absent repeated physical invasions which are cognizable as the imposition of a servitude—the taking of an easement—rather than the tortious creation of a liability for which damages are recoverable under state law.

Where there has been no repeated physical invasion, the character of which has effected the imposition of a servitude, no taking has been found, even though the activities of the defendants on adjoining properties greatly diminished the value of the plaintiffs' property and interfered with the plaintiffs' enjoyment of their property. In Nunnally v. United States, 239 F.2d 521 (4th Cir. 1956), for example, no taking was found to have flowed from the fact that the government maintained a bombing range adjacent to property on which the plaintiff had previously erected a recreational cottage. In Freeman v. United States, 167 F.Supp. 541 (W.D.Okl.1958), where airplane flights were alongside rather than over plaintiff's property, no taking was found. In Pope v. United States, 173 F.Supp. 36 (N.D.Tex.1959), where the Air Force maintained an engine test cell on its own property, it was held that the noise and fumes which emanated therefrom, and which certainly impaired the plaintiff's enjoyment of his property, did not effect a taking. In Bartholomae Corporation v. United States, 253 F.2d 716, 73 A.L.R. 2d 1293 (9th Cir. 1957), it was held that shock waves which emanated from nuclear detonations at a site somewhat removed from plaintiff's property did not effect a taking even though they were

strong enough to crack plaster in buildings on the plaintiff's property and throw employees to the floor.

In the Tenth Circuit, the opinion of the Court of Appeals in Batten v. United States, 306 F.2d 580 (1962) makes it clear, even extreme interference with enjoyment does not effect a taking. In that case it was clear that extremely loud noise emanated from a ground installation servicing jet aircraft; dark smoke blew from the jets during take-off, leaving an oily black deposit on the homes and laundry of the plaintiffs; the plaintiffs were conceded to "have suffered a substantial interference of the use and enjoyment of their properties" which was directly attributable to the facility maintained on adjacent property; and the plaintiffs' homes were diminished in value from forty to fifty-five per cent. Still, there was no taking. The Court of Appeals concluded:

> "The vibrations which cause the windows and dishes to rattle, the smoke which blows into the homes during the summer months when the wind is from the east, and the noise which interrupts ordinary home activities do interfere with the use and enjoyment by the plaintiffs of their properties. Such interference is not a taking. * * *" 306 F.2d at 585

In the Batten case the only compensation available to the plaintiffs, it followed, would come, if at all, by legislative grant. Still, concluded the Court of Appeals, "[T]he distinctions which the Supreme Court has consistently made between 'damages' and 'taking' control and compel denial of recovery." Consequential damages, the Court held, are not compensable "by force of the Constitution alone."

It follows, then, that plaintiffs' complaint does not make out a taking even on the assumption that the allegations therein be taken as established. It is not necessary, however, to determine whether or not a taking has occurred— or what the meaning of taking is—to determine whether the complaint in the instant case states a cause of action against the City of Boulder which arises under the Due Process Clause of the Fourteenth Amendment. Applying the test of Gully v. First National Bank, supra, we conclude that the immunity created by the Fifth Amendment of the Constitution of the United States, prohibiting the federal government from taking private property without just compensation, and made binding on the states by the Fourteenth Amendment, is not an essential element of the cause of action which the plaintiffs have stated in their complaint.

The plaintiffs' complaint does not indicate with specificity an intention to rely solely on the immunity which the United States Constitution creates. If it were clear that the plaintiffs were relying specifically on an immunity created by the Constitution of the United States it is possible that the rationale of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) would persuade that the plaintiffs' claimed immunity from taking without payment of just compensation would be supported if the meaning of "taken" in the Fifth Amendment were broadened; but defeated if the word "taken" were again given the meaning which the Court of Appeals for the Tenth Circuit has given it in the past. Unlike the petitioners in Bell v. Hood, however, the plaintiffs in the instant case do not seek recovery "squarely on the ground" that defendants violated some provision of the United States Constitution.

The gravamen of the plaintiffs' complaint is not that the defendants have taken property; it is, rather, that defendants are maintaining a nuisance and have thereby *damaged* plaintiffs' property in violation of Art. II, Section 15 of the Colorado Constitution. The relief prayed for emphasizes and underlines that fact. In their complaint the plaintiffs ask:

A. That this Court order the defendants to abate the alleged nuisance and direct that it be removed;

B. That the defendants be permanently enjoined from maintaining or using the premises as a public dump;

C. That various of the individual

**38**

named plaintiffs recover a money judgment for damages.

The relief which the plaintiffs seek is relief which clearly could be granted by a Colorado state court on the claims stated, sounding as they do in tort, and on the basis of Art. II, Section 15 of the Colorado Constitution, which makes compensable both taking and damages inflicted by the State of Colorado or one of its agencies or constituent parts. To determine that defendants have maintained and are tortiously perpetuating a private nuisance, and that maintenance of the same should be abated and money damages paid to the plaintiffs, a court need neither ask nor answer the question: Has property been taken within the meaning of the Constitution of the United States?

This is, consequently, not a case in which the immunity against taking without just compensation which is created by the United States Constitution is an essential element of the plaintiffs' stated cause of action. All the relief which the plaintiffs seek could be granted without inquiring whether or not there has been a taking. Neither is this a suit which "really and substantially involves a dispute or controversy respecting the validity, construction or effect of [a constitutional provision], upon the determination of which the result depends." The result of this suit depends on a finding of fact that the activities of the defendants either do, or do not, meet the criteria which define a private nuisance in Colorado tort law; or that damage has been inflicted upon the property of the plaintiffs within the meaning of Art. II, Section 15 of the Colorado Constitution. It does not depend on the construction which this Court, or any court, might give to the constitutional phrases "taken for public use without just compensation," or "deprive any person of * * * property without due process of law," as they give rise to and define immunities which are created by the Constitution of the United States. Consequently, no federal question is posed by the complaint which would require this Court to assume

jurisdiction under Title 28 U.S.C. § 1331. It is, therefore,

Ordered that the complaint be dismissed.

Plaintiffs are granted fifteen (15) days in which to file an amended complaint if they wish to do so. It may well be that plaintiffs are unwilling to rely solely on the federal question in accordance with the expression contained herein. If a complaint based wholly upon alleged taking is filed the question will then be, in the light of the cases cited, particularly those from the Tenth Circuit, whether the facts are such as to constitute an unlawful taking. Thus, it may well be that the cause will have to be dismissed on its merits after the facts are fully adduced. Should the plaintiffs desire not to file an amended complaint, the dismissal will become final at the expiration of fifteen days.