JIMMIE'S INCORPORATED and Jimmie's Realty Corporation of West Haven, Incorporated, Plaintiffs-Appellants,

v.

The CITY OF WEST HAVEN and the West Haven Redevelopment Agency, Defendants-Appellees.

No. 228, Docket 34900.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1970.

Decided Jan. 18, 1971.

---

Benson A. Snaider, Norwalk, Conn. (Abraham D. Slavitt of Slavitt & Connery, Norwalk, Conn., on the brief), for appellants.

James W. Marshall, New Haven, Conn. (William F. Gallagher, New Haven, Conn., on the brief), for appellees.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

Jimmie's Incorporated, owner of premises in West Haven, Connecticut, on which it conducts a restaurant devoted mostly to a drive-in, over-the-counter, short-order business, and Jimmie's Realty Corporation, which owns property across the street which is a sit-down restaurant, appeal from a judgment of the Connecticut District Court, of April 29, 1970, which dismissed their complaint in which they sought damages from the City of West Haven and the West Haven Development Agency for alleged interference with their business which they claim amounted to an unconstitutional taking of property, together with a prayer for a preliminary and a permanent injunction.

Prior to the hearing which resulted in dismissal of the complaint there was a hearing at which the parties stipulated that a preliminary injunction be granted. Accordingly, on December 12, 1969, Judge Blumenfeld signed an order enjoining defendants from interfering with the plaintiffs' relationship with their tenants, committing acts which will discourage the occupancy of plaintiffs' property, from warning plaintiffs not to develop and taking other action prohibiting the use, benefit and development of plaintiffs' property, until such time as the defendants shall acquire the plaintiffs' property under the laws of Connecticut.

Although the judgment of April 29, 1970 dismissed the complaint, it expressly provided that "the injunction entered in this case December 12, 1969, remain in effect pursuant to the terms thereof," and it went on to provide that "the complaint, insofar as it sets forth a claim for damages resulting from the conduct of the defendants prior to December 12, 1969, is dismissed for lack of jurisdiction."

It thus appears that the district court held that the plaintiffs had failed to show that what the defendants had done amounted to an unconstitutional taking of their property. With this we agree. But having found that there was no federal jurisdiction by reason of the failure of sufficient allegation and proof thereof, there remained no basis for continuing the injunction. Accordingly, we affirm that part of the judgment which dismissed the complaint and remand to the district court with directions to vacate the injunction of December 12, 1969.

The undisputed evidence shows that the controversy between Jimmie's and the City and its Redevelopment Agency goes back to 1960 when the Agency took measures for the redevelopment of part of West Haven which included plaintiffs' properties. Public hearings were held. The Agency purchased some properties in the redevelopment area, it demolished the structures on these proper-

ties, the occupants were advised to relocate and the defendants assisted them in doing so. The grade of a highway adjoining plaintiffs' property was raised and this resulted in some interference with access to one of the restaurants. On June 10, 1966, the City had adopted an urban renewal plan for the area, which is known as Savin Rock Urban Renewal Project No. 2.

At long last on October 31, 1966, West Haven authorized the acquisition of plaintiffs' property and negotiations ensued for the purchase of the plaintiffs' property until April 7, 1969 when the plaintiffs commenced proceedings in the state court which were thereafter withdrawn in August, 1969.

The complaint alleged that from on or about June 1960 until the filing of the complaint the defendants injured plaintiffs' business; that the defendants notified tenants occupying plaintiffs' property that the City would acquire such property and encouraged them to relocate. Plaintiffs were not permitted to make major improvements to their property. They also alleged that, by diverting traffic and changing the grade in the road, the defendants interfered with the flow of traffic to their business.

At the hearing before the district court, on November 23, 1969, plaintiffs offered evidence that they lost considerable rental income as a result of the redevelopment plan. In 1967 a doughnut business, one of plaintiffs' tenants, left plaintiffs' property when it discovered the City's intention to acquire the property, and they were unable to acquire a suitable tenant as a replacement. Plaintiffs also offered evidence that in 1968 the Italian Villa, a restaurant which had paid them $5,000 a month rent, moved out because of the redevelopment plan and the best available replacement was a toy business which paid only $150 rent per month.

There was also some evidence that the plan may have had the effect of interfering with plaintiffs' ability to improve and further develop their property. Plaintiffs offered into evidence their contract with the Roma Construction Company entered into in 1961 before they were advised about the full scope of the redevelopment plan. The contract called for a clearing of a mound of earth from their property so that a new motel could be constructed there. They also alleged that they consulted an architect to draw up plans for the new motel. Part of the mound was removed, but plans for the new motel were abandoned when plaintiffs were informed that their land would be taken in the future for redevelopment purposes.

At the hearing the City offered evidence to establish that plaintiffs had conferred on numerous occasions with City officials in an attempt to have their properties excluded from the redevelopment area. The City was also able to establish that the income of plaintiffs rose despite any adverse effects that the redevelopment plan may have had on them.

The owner president of plaintiff corporations, Salvatore Gagliardi, admitted in his testimony that the gross revenue of the corporations increased from eight or nine hundred thousand dollars in 1964 to one million one hundred thousand dollars in 1968. Plaintiffs conceded that their business income grew every year after redevelopment had first been planned.

While Judge Blumenfeld made no findings, apparently because the parties stipulated and agreed to the provisions of a preliminary injunction which he signed on December 12, 1969, he granted the motion to dismiss the complaint on the ground that any wrongs which the defendants may have committed were adequately compensated by damages which could be recovered under the state law.

While there may be such substantial interference with the enjoyment of property that it amounts to a tort for which some compensation is due the plaintiffs, it is clear that the facts which were alleged and shown to the

**1342**

district court in this case fall short of establishing a taking of sufficient dimension to justify the federal court in acting upon the complaint. Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), Gardner v. Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212 (1905), Mosher v. City of Boulder, 225 F.Supp. 32 (D.Colo.1964). All that is alleged and shown here is the kind of interference and minor harassment which frequently attends the public discussion and proceedings regarding the redevelopment of an area and the acquisition of the land required.[1]

The judgment of the district court insofar as it dismissed the complaint is affirmed. The case is remanded to the district court with directions to vacate that part of its judgment which continued in effect the injunction entered on December 12, 1969.

---

1. The *Foster* cases, cited by appellants, where federal courts found takings, are distinguishable since the decline in property value in those cases was much greater than in the instant case. Foster v. Detroit, 254 F.Supp. 655 (E.D.Mich.1966); Foster v. Detroit, 405 F.2d 138 (6th Cir. 1968); Foster v. Herley, 207 F.Supp. 71 (6th Cir. 1964).