Augustus J. SIMMONS, Plaintiff-
Appellant,

v.

Horace B. WETHERELL, as the Director
of Aeronautics, et al., Defendants-
Appellees.

No. 130, Docket 72–1541.

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1972.

Decided Jan. 19, 1973.

Stephen W. Silverman, Springfield,
Mass., for appellant.

S. Victor Feingold, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen. of the State of Connecticut, Clement J. Kichuk, Asst. Atty. Gen., of counsel), for appellees.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

SMITH, Circuit Judge:

This case represents the federal stage of a long-standing and acrimonious court battle between the Simmons family of East Granby, Connecticut and state officials over the latters' attempts to condemn some land adjoining Bradley International Airport. Augustus J. Simmons now appeals from a judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, Chief Judge, dismissing his § 1983 action against the named state officials for failure to state a claim upon which relief can be granted. We affirm the bulk of Judge Blumenfeld's decision; however, as to one aspect of this suit, we remand, for the reasons outlined below.

The battle here began when the state aeronautics commission moved under Conn.Gen.Stat. § 15–79, which then governed taking of land for airports,[1] to condemn the Simmons property. Pursuant to the statute, a petition for the determination of compensation was brought by the state in Hartford Superior Court; a judgment was rendered finding the taking reasonable and appointing a referee to assess damages. Anastasia Simmons (appellant's mother), appealed to the Connecticut Supreme Court, which reversed, finding error in the trial court's exclusion of evidence offered to show that property similarly situated had not been taken. State v. Simmons, 153 Conn. 351, 216 A.2d 632 (1966). Since this evidence was held to be relevant on the issue of whether the state had acted arbitrarily in singling out the Simmons land, the case was remanded for a new trial.

While the first suit was pending, Mrs. Simmons died, and Augustus entered the fray.[2] Before the second trial began, he raised as an affirmative defense to the taking the fact that the state authorities had not received the requisite statutory approval from the Town of East Granby before proceeding with the condemnation. The trial court agreed; the Supreme Court affirmed. State v. Simmons, 155 Conn. 502, 234 A.2d 835 (1967). Round two for the Simmons family.

Undaunted, the state tried again, this time attempting to use Conn.Gen.Stat. § 48–12, the general condemnation statute, which provided for procedures different from § 15–79 in cases where compensation could not be agreed upon by the parties. The Simmons family prevailed again, in Simmons v. State, 160 Conn. 492, 280 A.2d 351 (1971), when the Supreme Court held that the state was required to use the § 15–79 procedure.

At about the same time the abortive condemnation attempts were taking place, a related dispute arose between the state and Simmons over some land upon which runway lights had been placed. Simmons claimed that the land was his; the state said that it was the state's. An ejectment action followed. In Simmons v. Parizek, 158 Conn. 304, 259 A.2d 642 (1969), the Supreme Court held that since the complaint did not allege that the state officials had acted unconstitutionally or in a manner unauthorized by statute, the suit was barred by the doctrine of sovereign immunity. Appellant took the hint, and on October 14, 1969 resurrected the ejectment action, this time alleging that the taking of the land and the erection of runway lights was done both unconstitutionally and without statutory authorization.

---

1. § 15–79 was repealed by Public Act 768, § 263 (1969).

2. Even Augustus' succession to the land did not escape the scrutiny of the Connecticut courts. *See* Simmons v. McKone, 158 Conn. 71, 255 A.2d 822 (1969).

That suit, Docket No. 162923, Hartford Superior Court, is still pending.

Shortly before the Connecticut Supreme Court decision in Simmons v. Parizek, *supra,* a Special Act was passed by the Connecticut General Assembly, allowing Augustus Simmons to sue the state for damages over "loss of use of land," arising out of the bumbling condemnation proceedings. On January 5, 1970, Simmons brought such a suit, Docket No. 163875, Hartford Superior Court; the action is still pending.

Thus, if there ever was a litigant who knew that his claims would be fairly heard in the state courts, Augustus Simmons was he. Nevertheless, perhaps for a change of setting, he instituted this § 1983 action on December 22, 1971, alleging that his property was taken without due compensation, and seeking damages. Since the complaint alleged deprivation of property rights through state action, jurisdiction was correctly predicated upon 28 U.S.C. § 1343(3). Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

■ As Judge Blumenfeld recognized, the basic question presented by this suit is whether the attempts at condemnation amount to an unconstitutional taking, or whether they simply constitute at most tortious interference by the state officials with Simmons' property rights. Judge Blumenfeld found that the latter situation was presented by the attempts at condemnation here; we agree.

Simmons relies heavily upon such cases as Foster v. Detroit, 405 F.2d 138 (6th Cir. 1968); Foster v. Herley, 330 F.2d 87 (6th Cir. 1964); and Inmobiliaria Borinquen, Inc. v. Santiago, 295 F. Supp. 203 (D.P.R.1969), for the proposition that government misuse of the condemnation power can support a § 1983 action. While we have no quarrel with the general proposition, this case is readily distinguishable from the ones cited. In each of those instances, the state officials had begun condemnation proceedings and then let them pend, or had announced redevelopment plans and never brought them to fruition. The result was the "freezing" of the plaintiff's use of his property, and the courts found enough of a taking to state a cause of action under § 1983.

Here, however, the state officials proceeded with reasonable speed, if not efficiency, every time they sought to condemn the land. Each effort at condemnation was accompanied by a prompt resort to the judicial process to perfect the taking; each time, Simmons fought the action, and eventually prevailed. In the cited cases, the damage arose from the state's inexcusable delay in finalizing its eminent domain planning; here any delay arises largely from Simmons' efforts at defeating the condemnation in the courts. In the cited cases, the crux of the problem was official inaction; here, the state has repeatedly tried to condemn the land and pay Simmons just compensation. While Simmons certainly should not be censured for asserting his rights, neither should state officials be forced to await the natural delays of litigation at their peril, particularly when the issues involved are narrow ones of statutory construction.

■■ This is not to say that Simmons may not have a valid tort claim, based upon the effects of the state's apparent ineptitude here. But the appropriate forum for the assertion of such a claim is the state court, where Simmons now has an action, brought pursuant to the waiver of immunity in the 1969 Special Act, pending. Whatever else the state's actions here amounted to, they did not constitute a taking within the ambit of § 1983. *See* Jimmie's Inc. v. City of West Haven, 436 F.2d 1339 (2d Cir.), cert. denied, 403 U.S. 931, 91 S.Ct. 2254, 29 L.Ed.2d 710 (1971).

■ Thus, as to the condemnation attempts, we affirm the judgment below. The allegations about the land upon which the runway lights are placed, however, stand on a somewhat different footing. At least at this stage of the proceedings, we must accept Simmons' claim that he owns the land, and that

the state had fenced it off and put runway lights on it. Assuming all that to be true, we are unable to conclude that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). If the land is in fact Simmons', and the state indeed has fenced it off without paying him due compensation or instituting court proceedings, it would seem that a deprivation of appellant's right to "enjoy" the use of his land is stated. *See Lynch, supra*, 405 U.S. at 544, 92 S.Ct. 1113.

However, as Judge Blumenfeld properly recognized, the taking claim here really revolves around a boundary dispute. It is that same dispute that forms the basis of Simmons' pending suit, Docket No. 162923, in Hartford Superior Court.

The resolution of boundary disputes is a matter traditionally within the purview of the state courts; the final decision there will undoubtedly control Simmons' claims here. Thus, while we find a cause of action stated with respect to the land upon which runway lights are placed, and remand, the district court should stay its hand here pending the resolution of the state court action, both in the interests of comity and efficient judicial administration. *See* Klein v. Walston & Co., 432 F.2d 936 (2d Cir. 1970); Mottolese v. Kaufman, 176 F.2d 301 (2d Cir. 1949) (L. Hand, J.)

We have considered appellant's other claims, including those based upon an alleged false arrest and imprisonment, and find them without merit. We affirm the judgment below in part and remand in part for disposition not inconsistent with this opinion.